**SIGNED THIS: November 22, 2011**

_____

**Mary P. Gorman
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 11-70101 |
| LINDA LEE BRADSHAW, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEFFREY D. RICHARDSON, | ) | |
|  Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 11-7051 |
| | ) | |
| LINDA LEE BRADSHAW and | ) | |
| EDWARD L. HUNTER, | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N

Three weeks before she filed her bankruptcy petition in January 2011, Linda Lee Bradshaw ("Debtor") executed and recorded a deed in an attempt to transfer a parcel of real estate to her brother, Edward L. Hunter. Debtor now claims that the real estate had actually been sold to Mr. Hunter in 2008 and the deed was executed simply to finalize that old transaction. However, Debtor failed to disclose either the original transaction or the recent transfer when she filed this case, and stated at her first meeting of creditors that the deed had been signed in 2008. Debtor's Chapter 7 Trustee, Jeffrey D. Richardson, ("Trustee") filed this adversary proceeding seeking the denial of Debtor's discharge because of her pre-petition transfer of property and the false oaths which she made about the transfer. For the reasons set forth below, the Debtor's discharge will be denied.

## I. Factual and Procedural History

The facts in this case are substantially undisputed. Debtor filed her voluntary Chapter 7 petition on January 16, 2011, and filed her Statement of Financial Affairs ("SFA") and schedules on the same date. Paragraph 10 of the SFA required the Debtor to "[l]ist all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of the case." (emphasis in original). Debtor answered, "None." On her Schedule A, which lists real property, Debtor listed two parcels of real estate — a three-bedroom ranch located at 4057 East Hickory in Decatur, Illinois, and a single family dwelling located at 4055 East Hickory in Decatur. As to the property at 4055 East Hickory ("the subject property"), Debtor listed the current value as $5,000 and disclosed a real estate tax lien encumbering it in the amount of $1200.

Debtor's first meeting of creditors occurred on February 23, 2011. The Trustee inquired about the subject property, and the Debtor told the Trustee that she had deeded it to Mr. Hunter in 2008.

Trustee asked the Debtor, "You said you prepared the deed and signed it?", and the Debtor answered,

"Yes, and that was in 2008." The Trustee pinned down the date of the execution of the deed with the

following question: "Understanding that you are still under oath, if I go and look at that deed, you

are telling me under oath, and this is important, that the deed will bear a date of 2008?", to which

the Debtor's answer was: "Yes."[1]

After the first meeting, the Trustee did, in fact, examine the deed and found that the deed was

dated December 30, 2010, and bore a recording stamp with the date of January 5, 2011. The

instrument was shown as having been prepared by the Debtor. No other deeds relating to the subject

property are of record for any relevant time period.

On March 9, 2011, Trustee filed an adversary complaint, which was amended on March 14,

2011. The First Amended Adversary Complaint ("Complaint") is brought in five counts. Counts I

through III seek the denial of Debtor's discharge under provisions of § 727(a) of the Bankruptcy

Code. 11 U.S.C. § 727(a). Counts IV and V seek to avoid the transfer of the subject property to Mr.

Hunter. Counts IV and V were resolved in favor of the Trustee prior to trial.

Count I of the Complaint alleges that, on January 5, 2011, the Debtor, with an intent to

defraud, transferred the subject property to Mr. Hunter and, therefore, should be denied a discharge

pursuant to § 727(a)(2). 11 U.S.C. § 727(a)(2). Count II of the Complaint alleges that Debtor should

be denied a discharge under § 727(a)(4)(A) because her denial in her sworn schedules that she made

any transfers within two years preceding the commencement of her case constituted a false oath. 11

U.S.C. § 727(a)(4)(A). Count III of the Complaint alleges that Debtor should be denied a discharge

_____

[1] At the trial, and prior to the examination of witnesses, the Trustee submitted a Request to
Admit Facts, which had been served on both the Debtor and her attorney. No response was made to
the Request to Admit Facts and, accordingly, Debtor's counsel conceded that the facts set forth in
the Request are admitted. *See* Fed. R. Civ. P. 36; Fed. R. Bankr. P. 7036. Many of the items listed
in the Request to Admit Facts were quotations of the questions asked by the Trustee and the answers
given by the Debtor at the February 23rd meeting.

under § 727(a)(4)(A) because her testimony at the first meeting of creditors that she signed the deed to the subject property in 2008 constituted a false oath. *Id.*

The trial was held on September 14, 2011, and both the Debtor and Mr. Hunter testified. Debtor stated that her residential address was 4057 East Hickory in Decatur and that the subject property is adjacent to her residence. In the summer of 2008, Debtor agreed to sell and Mr. Hunter agreed to buy the subject property. Mr. Hunter applied for a 401(k) loan in the amount of $15,000, to be used to buy the subject property, build a garage on the property, and renovate the standing structure or demolish and rebuild it. On or about October 10, 2008, the Debtor and Mr. Hunter partially filled out and signed a Real Estate Sale and Purchase Agreement form. The purchase price was listed as $5000, and that sum was paid by Mr. Hunter to Debtor in several small installments until Mr. Hunter's 401(k) loan came through in late October 2008, at which time the remainder of the purchase price was paid. No deed of conveyance was contemporaneously signed or recorded. Mr. Hunter never paid the real estate taxes on the subject property; rather, the Debtor remained liable for the taxes pending the execution of a deed. Mr. Hunter never occupied the subject property and, at trial, described the residence as uninhabitable.

In December 2010, Debtor informed her brother that she was contemplating filing bankruptcy. Mr. Hunter testified that his response to the Debtor was, "you can't lose my house because you're gonna file bankruptcy." After a series of telephone conversations, and at the request of Mr. Hunter, Debtor prepared a deed to the subject property. Mr. Hunter testified that, because he was a truck driver, he and the Debtor had to make special arrangements to meet to execute the deed. He stated that he had the occasion to make a delivery to a business adjacent to the Staley Credit Union in Decatur on December 30, 2010, and that he was able to park his truck at the business and walk over and meet the Debtor at the Credit Union to execute the deed and have it notarized. They did meet, and the deed was executed and notarized on December 30th. Mr. Hunter testified that he

asked the Debtor at the time if the deed would "do any good," and he said that the Debtor stated that she "didn't know."

Mr. Hunter further testified that, because of his busy schedule, he was unable to personally deliver the deed to the Macon County Recorder's office. Accordingly, he asked the Debtor to take the deed there and have it recorded. On January 5, 2011, the Debtor did just that.

Debtor testified that she talked several times on the telephone with her bankruptcy attorney, Leann M. Niebuhr, before they ever met. She stated that her first meeting with Ms. Niebuhr occurred in Springfield on a Monday in early January 2011. Debtor said that she took most of her bills to that meeting and, at some point in time thereafter, she received her paperwork — her bankruptcy petition, SFA, and schedules — in the mail. She testified that she signed and mailed everything back to Ms. Niebuhr promptly.

On direct examination by Ms. Niebuhr, the Debtor admitted that, before her bankruptcy case was filed, she had a discussion with Ms. Niebuhr about the subject property and Mr. Hunter's interest in it. Ms. Niebuhr told the Debtor that the Trustee might administer or might abandon the subject property, and that it was within his discretion to do either. Ms. Niebuhr then asked the Debtor if she recalled Ms. Niebuhr advising her that it was too late to finalize the transfer of the subject property to Mr. Hunter. Debtor responded that she did not recall. The Debtor then admitted that she went ahead and transferred the subject property to Mr. Hunter because it was what he wanted.

When the Trustee asked the Debtor about Paragraph 10 of the SFA, which requires the listing of any transfers of property within two years of the filing of the petition, the Debtor acknowledged that she did not list the transfer. At one point, the Debtor testified that she did not know why she did not disclose the transfer. At another point, she claimed that she did not read the paperwork before she signed and returned it. Debtor also admitted that she understood that a deed transfers the title to real property. However, when the Trustee asked the Debtor about her testimony at the first meeting

–5–

of creditors regarding when the deed was signed, Debtor testified that she misunderstood the question when she answered, "2008." Debtor stated that she thought the question related to the agreement between herself and her brother. Later, Debtor explained that the reason she declined to disclose the transfer was that she was not planning on filing bankruptcy as quickly as she had.

During closing arguments, Ms. Niebuhr stated that the Debtor was confused during the bankruptcy process, was confused during the trial, and that, although she acquiesced to Mr. Hunter's demand that she deed the property to him just prior to filing her petition, the Debtor had no intent to defraud her creditors.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. § 1334. The matters before the Court consist of objections to discharge and are, therefore, core proceedings. *See* 28 U.S.C. § 157(b)(2)(J).

## III. Legal Analysis

The discharge provided by the Bankruptcy Code is granted only to honest debtors. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Issues raised by objections to discharge should be liberally construed in favor of debtors in order to preserve the "fresh start" goal of the Bankruptcy Code. *In re McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party objecting to the discharge has the burden of proving all required elements by a preponderance of the evidence. Fed. R. Bank. P. 4005; *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999); *In re Kent*, 397 B.R. 438, 441 (Bankr. C.D. Ill. 2008).

Count I of the Complaint is brought pursuant to § 727(a)(2)(A) of the Bankruptcy Code, which provides as follows:

(a) The court shall grant the debtor a discharge, unless –

* * * *

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

(A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).

In order to prevail on his objection to discharge, the Trustee must prove that the Debtor transferred property with the intent to hinder, delay, or defraud a creditor within one year of the bankruptcy filing. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). The exception to discharge in § 727(a)(2)(A) essentially "consists of two components: an act (i.e.[,] a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *Id.* (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).

It is clear from the evidence that the Debtor prepared, executed, and recorded the deed relating to the subject property in order to transfer title to Mr. Hunter. The Debtor testified that she understood that a deed is an instrument for transferring title to real property. Although from the face of the deed it appears that its execution may have been flawed, there is no doubt that the execution and recording of the deed conveyed at a minimum some colorable interest — sufficient at least to cloud the title — to Mr. Hunter.[2]

---

[2] Debtor is shown on the deed as Grantor and Mr. Hunter is shown as the Grantee. However, Mr. Hunter's signature appears on the Grantor signature line. Debtor signed the deed as preparer, but

Debtor also admitted in her testimony that it was her intent to transfer the subject property to Mr. Hunter and to rid herself and, thus, her bankruptcy estate, of any interest in the subject property. While Debtor stated that she did not intend to defraud anyone, she clearly knew the consequences of her actions and intended at the very least to finalize the transfer of the subject property to the possible detriment of her creditors and her bankruptcy estate. The fact that Debtor's actions were driven in part by a desire to benefit her brother rather than a malicious desire to deprive her bankruptcy estate of the subject property is irrelevant. Her admitted goal was to remove the subject property from her estate so that the Trustee and her creditors could not reach it. Trustee has proven the act and the improper intent on the part of Debtor. Consequently, Debtor's discharge must be denied pursuant to Count I of the Complaint.

Counts II and III of the Complaint are brought pursuant to § 727(a)(4)(A) of the Bankruptcy Code, which provides as follows:

(a)     The court shall grant the debtor a discharge unless –

* * * *

(4)     the debtor knowingly and fraudulently, in or in connection with the case –

(A)     made a false oath or account[.]

11 U.S.C. § 727(a)(4)(A).

The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the

---

her signature is below the notary's signature and, therefore, is not notarized. The Trustee acknowledged that the deed has some flaws on its face. However, neither the Debtor nor the Trustee suggested that the deed was insufficient to transfer the subject property to Mr. Hunter. Because the Debtor did not raise the defense that the deed was so flawed that it did not effectuate a transfer, this Court will not engage in a detailed review of the document or Illinois conveyancing law.

debtor provides reliable information to those who have an interest in the administration of the estate. *In re Carlson*, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999), *aff'd* 250 B.R. 366 (N.D. Ill. 2000), *aff'd* 263 F.3d 748 (7th Cir. 2001). In order to prevail under § 727(a)(4), a plaintiff must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case. *In re Rothermel*, 370 B.R. 185, 187 (Bankr. C.D. Ill. 2007), *aff'd* 2007 WL 3120118 (C.D. Ill. Oct. 24, 2007), *aff'd* 274 Fed.Appx. 486 (7th Cir. 2008); *In re Clarke*, 332 B.R. 865, 872 (Bankr. C.D. Ill. 2005). The Statement of Financial Affairs and schedules filed by a debtor constitute statements under oath. *In re Gannon*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994).

The Trustee has alleged that the Debtor's SFA and schedules contained knowingly-made, intentionally-deceptive, false and material statements of fact, to wit: Question 10 of the SFA states falsely that Debtor made no transfers of property within the two years prior to filing her petition, and Schedule A does not disclose Mr. Hunter's interest in the subject property. At various points during her testimony, Debtor stated that she did not read her bankruptcy petition, SFA, and schedules before she signed them, that she read but did not understand some unspecified questions, that she knowingly made a false statement but did not intend to deceive anyone, and that she was confused by various questions and dates. The Debtor's answers to questions propounded by her own attorney belied her statements and completely undermined her credibility.

Debtor knew the significance of signing and recording the deed. She admitted this on the stand to Ms. Niebuhr and stated that she did it anyway because it was what Mr. Hunter wanted and demanded. It is clear that the execution of the deed took place prior to Debtor's first face-to-face

meeting with Ms. Niebuhr. However, it is not clear from the testimony whether the deed was recorded prior to or subsequent to the Debtor's first meeting with Ms. Niebuhr on a Monday in early January 2011. In any case, it makes no difference. By the time the Debtor signed her petition, SFA, and schedules which are dated January 16, 2011, she had recorded the deed and, in failing to disclose the transfer at that time, knowingly made an intentionally-deceptive false and material statement at Question 10 of her SFA.[3] Further, it is clear that the Debtor was not confused about the significance of signing and recording the deed. In addition to her own response to Ms. Niebuhr's questions on the stand, Debtor's course of conduct clearly demonstrates that, in order to meet Mr. Hunter's demands to effectuate the transfer of the subject property and in order to defeat any interest the Trustee might acquire in the subject property, she knew what she was doing when she signed and recorded the deed. Consequently, her SFA contained a knowingly-made, intentionally-deceptive, false and material statement of fact. Accordingly, Debtor's discharge must be denied pursuant to Count II of the Complaint.

---

[3] The Trustee correctly focuses on Debtor's failure to disclose the execution and recording of the deed to Mr. Hunter in the weeks just prior to her case filing. However, this Court must note the failure of the Debtor and her attorney, Ms. Niebuhr, to disclose Mr. Hunter's interest in the subject property and his status as a potential creditor in her SFA and schedules. Clearly, because of the 2008 Real Estate Sale and Purchase Agreement and the $5000 he paid pursuant to that document, Mr. Hunter acquired an interest in the subject property and had a claim against the Debtor. Ms. Niebuhr's questioning of the Debtor confirmed that she knew about Mr. Hunter's interest in the property and, accordingly, her failure to disclose that interest and to schedule Mr. Hunter as a creditor is troubling. Ms. Niebuhr should not have ignored the information but rather should have questioned the Debtor in detail about Mr. Hunter's interest in the subject property in order to fulfill her own independent duties as an officer of this Court. *See* 11 U.S.C. § 707(b)(4)(C)(i). Although the Court cannot speculate about whether the Debtor might have avoided the result here if her attorney had been more diligent and had pushed harder to understand the exact details of the transaction with Mr. Hunter, this Court can state unequivocally that Ms. Niebuhr had a duty to be more diligent, to push harder, and to insist that full disclosure be made. Ms. Niebuhr did not fulfill her statutory duties by ignoring the information she admittedly had about Mr. Hunter and his interest in the subject property.

If made with the requisite fraudulent intent, a false statement made orally at a creditors' meeting is sufficient grounds for denying a discharge provided it was knowingly made and is material. *In re Lunday*, 100 B.R. 502, 508 (Bankr. D.N.D. 1989). It is a debtor's duty to consider the questions posed on the schedules and at the creditors' meeting carefully and answer them accurately and completely. *Id.*

The Debtor's precise testimony as to the date of the execution of the deed in question is unequivocal. The Debtor said that the deed was executed in 2008 when, in fact, she knew that the execution of the deed had occurred only weeks before her bankruptcy filing and less than two months before her testimony at her first meeting of creditors. Both the Debtor and Mr. Hunter testified as to their multiple phone calls and detailed planning in an effort to get together to finalize the execution of the deed in anticipation of the Debtor's bankruptcy filing. She knew exactly when the deed was signed, and her attempts now to plead confusion are not credible. The Trustee's questions were clear, direct, and precise, and Debtor's answers left no room for interpretation. Consequently, Debtor's sworn testimony at her first meeting of creditors included knowingly-made, intentionally-deceptive, false and material statements of fact. Accordingly, Debtor's discharge must be denied pursuant to Count III of the Complaint.

## IV. Conclusion

For the reasons set forth above, Counts I, II, and III of Trustee's Amended Complaint are sustained. Debtor's discharge will be denied pursuant to §§ 727(a)(2)(A) and 727(a)(4)(A) of the Bankruptcy Code.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052

of the Rules of Bankruptcy Procedure.

See written Order.

###